DISABLED PATRIOTS OF AMERICA,
INC., et al., Plaintiffs,

v.

LANE TOLEDO, INC., Defendant.

Disabled Patriots of America,
Inc., et al., Plaintiffs,

v.

Suemar Realty, Inc., Defendant.

Nos. 3:04 CV 0538, 3:04 CV 7137.

United States District Court,
N.D. Ohio,
Western Division.

July 16, 2004.

Lawrence A. Fuller, Fuller, Fuller & Associates, Miami, FL, Owen Benton Dunn, Jr., Toledo, OH, for Disabled Patriots of America, Inc., Michael Miles, Plaintiffs.

Neema M. Bell, Robert A. Koenig, Shumaker, Loop & Kendrick, Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, OH, for Lane Toledo, Inc., Suemar Realty, Inc., Defendants.

## ORDER

CARR, District Judge.

These are consolidated Americans with Disabilities Act ("ADA") cases, brought under Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, in which defendants Lane Toledo, Inc. ("Lane") and Suemar Realty, Inc. ("Suemar") challenge the standing of the organizational plaintiff, Disabled Patriots of America, Inc. ("DPA"), to bring suit. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Pending are defendants' Fed.R.Civ.P. 12(b)(6) motions to dismiss DPA from the suits. For the following reasons, the motions will be granted in part and denied in part.

## BACKGROUND

DPA is a Florida not-for-profit corporation that includes in its membership individuals with disabilities as defined by the ADA, 42 U.S.C. § 12101 *et seq.* One of these members, Michael Miles, is the individual plaintiff in this suit. Miles is unable to ambulate without the assistance of a wheelchair. Miles alleges various forms of disability-based discrimination, and no party challenges his ability to maintain an action in this court. Specifically, Miles alleges that he has visited the properties which form the basis of these lawsuits and plans to return to the properties to avail himself of the goods and services offered to the public at the properties.

DPA contends that it is entitled to maintain an action against defendants on behalf of its named and unnamed members. DPA claims to be acting in a representational capacity bringing suit for all violations of the ADA, including those not actually suffered by its only named member in the present suit, Michael Miles. Defendants disagree, and have timely filed motions to dismiss DPA from the present suit.

Miles and DPA seek injunctive relief in the form of physical changes to the defendants' premises so that they comport with the ADA, as well as attorney's fees as provided for under the ADA.

## STANDARD OF REVIEW

No complaint shall be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Pfenning v. Household Credit Servs.,* 295 F.3d 522, 525–26 (6th Cir.2002) (citing *Bibbo v. Dean Witter Reynolds, Inc.,* 151 F.3d 559, 561 (6th Cir.1998)). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court's task is to determine not whether the complaining party will prevail on its claims, but whether it is entitled to offer evidence in support of those claims. *Scheuer v. Rhodes,* 416 U.S.

232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### DISCUSSION

■ "Whether a party has standing under Article III of the Constitution to bring a claim 'involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise.'" *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir.2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). To establish standing under Article III, a plaintiff must demonstrate: 1) he has suffered an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; 2) a causal connection between the injury and the challenged conduct, that is, "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court"; and 3) the injury's redressability by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see*

*also Doe v. Porter*, 370 F.3d 558, 562 (6th Cir.2004).

■ An organization seeking injunctive relief for enforcement of protective legislation has standing if: 1) its members would otherwise have standing to sue in their own right; 2) the interest it seeks to enforce is germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of the individual members of the lawsuit. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir.2001). The test's third prong is prudential and discretionary—that is, not required, but may be of importance and should be considered where appropriate. *United Food and Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).[1] It is therefore not a constitutional requirement under Article III. *Id.* After having satisfied the first two prongs under *Hunt*, "it is difficult to see a constitutional necessity for anything more." *Id.* at 556, 116 S.Ct. 1529. The third prong of the associational standing test is concerned more with "matters of administrative convenience and efficiency," than "elements of case or controversy within the meaning of the constitution." *Id.* at 557, 116 S.Ct. 1529.

In *Hunt*, the Court explained that to have standing, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened in-

---

1. The Court, in *United Food*, noted several reasons why the third prong is important: It may guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity. And it may hedge against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed. But these considerations are generally on point whenever one plaintiff sue's for another's injury. 517 U.S. at 556–557, 116 S.Ct. 1529. It logically follows that the third prong is discretionary insofar as the relief sought is injunctive, as opposed to a suit for damages.

jury as a result of the challenged action of the sort that would make a justiciable case had the members themselves brought suit." *Hunt*, 432 U.S. at 342, 97 S.Ct. 2434. The Court further reasoned that "[i]f in a proper case the association seeks a declaration, injunction, or some other form of *prospective* relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 343, 97 S.Ct. 2434 (emphasis added).[2] "[The organization] . . . provides the means by which [the organization's members] express their collective views and protect their collective interests." *Id.* at 345, 97 S.Ct. 2434.

Therefore, an organization has standing when its members have sustained a "direct and sufficient" injury, the organization is devoted to representing its members' interests, and the members are not needed individually for just adjudication. *Id.* at 343–344, 97 S.Ct. 2434.

In the present case, plaintiffs seek prospective relief and the rule in *Hunt* is therefore applicable. Plaintiffs seek relief from Lane and Suemar in the form of modifications to the properties that are the subject of these cases. No award of damages is sought.

■ Applying *Hunt* to the facts before this court, it appears clear that the first two prongs of the test are met. The plaintiff, Miles, has standing to sue on his own behalf: he suffered an injury in fact when obstacles impeded his free access to and movement around the defendants' premises. Moreover, Miles, a resident of Ohio,

has expressed an intent to return if the properties, located in Ohio, become ADA compliant.

Miles' injury is directly precipitated by the defendants' alleged continuing failure to comply with the ADA in a timely manner, thereby establishing the requisite causal connection. Finally, Miles has shown that a court order requiring the defendants to remedy the barriers to access and mobility on the premises in question will redress the complained of injury. Miles therefore has standing to seek redress for his injuries.

Because the individual plaintiff has standing to seek redress for his injuries, the only remaining question is whether DPA has organizational standing to bring suit to remedy these, and other, impediments to individuals with disabilities.

With regard to the second prong of *Hunt*, DPA has alleged that it is an organization formed "to provide support for its members as well as create a unified voice to make society at large aware of the issues that affect disabled persons, and in particular the lack of access to public accommodations." (Doc. 1, at 12–13). Accordingly, the interest DPA seeks to enforce through this lawsuit "is germane to the organization's purpose." *Hunt*, 432 U.S. at 343, 97 S.Ct. 2434. Thus, DPA satisfies the first two prongs of the *Hunt* test: it has a member who has standing and it has an interest in this suit germane to the organization's purpose.

Turning to *Hunt*'s third element, the prudential considerations in allowing DPA

---

**2.** The Court was clear that this holding was to be applied only to situations where the plaintiffs sought prospective relief, as opposed to damages. Prospective relief, as the Court noted, would apply to all members of the organization who are similarly situated. A suit for damages, on the other hand, would require a specific showing as to the extent of

injury suffered by each and every individual so that damages can appropriately be tailored depending on the level of harm. Application of this principle in a suit for damages would create an award of blanket damages that could prove highly speculative regarding individual plaintiff. *Hunt* 432 U.S. at 343, 97 S.Ct. 2434.

to remain a party to this suit, DPA is a membership organization seeking to further the interests and objectives of its members in preventing and remedying discrimination on the basis of disability.

Plaintiff Miles can be presumed to have joined DPA to call on its experience and resources to assist his efforts to reduce barriers to full access to and full enjoyment of places of public accommodation. There can, indeed, be strength in numbers, and many together can often do what one alone cannot.

The defendants argue:

Obviously, Michael Miles purported 'injury in fact,' the sole basis of his individually asserted claim, cannot simultaneously support his individual claim and also serve as the basis for the alleged 'injury in fact' sustained by other unnamed DPA members necessary to satisfy the threshold requirements for DPA's challenged representational standing.

(Doc. 19, at 3).

Such a proposition is conclusory and unpersuasive, and does not acknowledge the doctrine that "if in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth,* 422 U.S. at 515, 95 S.Ct. 2197. The barriers that allegedly impeded plaintiff Miles' access and movement affect all persons with similar disabilities, and DPA properly seeks to further its organizational objectives by joining its members in his challenge to those alleged barriers.

■ Relying on *Steger v. Franco, Inc.,* 228 F.3d 889 (8th Cir.2000), defendants contend, in any event, that DPA cannot seek to remedy violations of the ADA which it has not alleged as affecting its members. Insofar as defendants contend that DPA may not bring claims other than those rooted in Miles' adverse experience, they are correct. A plaintiff lacks standing to bring suit under the ADA for those disabilities which do not affect him or her—or, in the case of an organizational plaintiff, it. *Steger,* 228 F.3d at 893.

Therefore, DPA may not pursue relief for those infractions of the ADA which it has not alleged with any specificity in its complaint, and more importantly those which it has not demonstrated as causing injury to it or its members. *Id.* To do otherwise would run the risk of removing the issue from the realm of an actual case or controversy as required by Article III.

## CONCLUSION

Because DPA has demonstrated organizational standing, it may continue to prosecute this case in a manner not inconsistent with this opinion.

It is, therefore,

ORDERED THAT defendants' motions to dismiss be, and hereby are, denied in part and granted in part.

So ordered.